890 So.2d 1199 (2005)
Sharon L. ADAMS, Appellant,
v.
Douglas W. SHIVER, Appellee.
No. 1D04-1651.
District Court of Appeal of Florida, First District.
January 11, 2005.
*1200 Kristin Adamson of Novey, Mendelson & Adamson, Tallahassee, for Appellant.
Russell S. Roberts of Roberts, Roberts & Roberts, Marianna, for Appellee.
HAWKES, J.
In this child custody case, the mother appeals the trial court's order awarding primary physical residence (PPR), modifying custody terms, and denying her petition to relocate. We affirm in all respects, and write only to clarify the appellate standard for two arguments raised by Appellant, which continue to occasionally arise.
First, Appellant argues the trial court applied the wrong legal standard when awarding PPR. However, Appellant requested to be, and was, appointed PPR. It is well settled that when a litigant requests and receives a favorable ruling, she cannot later, on appeal, be heard to complain of the trial court's action in acceding to her request. See Arsenault v. Thomas, 104 So.2d 120 (Fla.1958).
Appellant also argues reversal is required because the trial court failed to specifically cite and discuss subsection 61.13(2)(d), Florida Statutes (2003), when denying Appellant's relocation request. The order on appeal references section 61.13, Florida Statutes (2003), several times, but does not specifically reference subsection 61.13(2)(d).
However, the order states the trial court considered the enumerated factors set forth in section 61.13, Florida Statutes. Moreover, the trial court found the mother's relocation from Marianna, Florida, to Atlanta, Georgia, would not be in the best interest of the child because it is more than five hours away, the "only real constant" in the child's life is his contact with his current place of residence and his extended family with a stable home, school, and community, and that the mother's past conduct has been designed to frustrate Father's visitation, which would be significantly diminished by her relocation.
These findings constitute competent, substantial evidence that the trial court properly considered the elements in the required subsection when rendering its opinion. The fact that the trial court failed to expressly reference the subsection does not, per se, mean it failed to consider the factors it contained. We have found no case law that requires a trial court's order to contain "magic words," when its express findings sufficiently establish it properly considered the required factors. See generally Boca Casino Cruises, Inc. v. Monte Carlo Cruise Concessions, Inc., 760 So.2d 281 (Fla. 4th DCA 2000). The trial court is not required to delineate in its final order everything it *1201 considered in its resolution of each contested fact. The trial court's order is AFFIRMED.
DAVIS, J., Concurs; and BROWNING, J., Dissents with Opinion.
BROWNING, J., dissents.
Because Appellant received the relief she vehemently opposed, and was denied the relief she requested in the trial court, she is denied appellate relief; a ground not argued by Appellee in the trial court or in this court. Further, on the issues argued below and here, the trial court reversibly erred by applying the wrong standard of proof as to the child's primary place of residence; and the trial court failed to apply, or show that it applied, the correct relocation factors as required under section 61.13(2)(d), Florida Statutes. For all these reasons, I dissent.

Facts and Background
The facts, omitted by the majority, are necessary to an understanding of why I dissent and why I believe the majority is incorrect in its affirmance.
Appellant is the natural mother of the child, and Appellee is his natural father. The child was born February 19, 1998, and Appellee was determined to be the natural father in a paternity suit under chapter 742, Florida Statutes, on April 23, 1999. As a part of that proceeding, Appellee was ordered to pay child support to Appellant; the order did not address the primary place of residence of the child, and Appellee did not request primary place of residence, as was his option under section 742.031(1). The parties operated under this arrangement with Appellee exercising voluntary visitation until February 22, 2003, when visitation problems developed, leading to their first contested legal proceeding.
On February 22, 2002, Appellee filed a petition to establish a visitation schedule with the child. Appellant answered the petition, alleging that she had not thwarted visitation and counter-petitioned for a modification of the paternity order, alleging a "substantial change of circumstances," because Appellee was using drugs, was abusing the child, and was an unfit parent for unsupervised visitation. Appellant further requested an increase in child support and payment of medical expenses by Appellee. The trial court entered a temporary order establishing a schedule and reserved jurisdiction on the remaining issues. Neither party moved the litigation forward, and they harmoniously operated under the temporary order for approximately 13 months until Appellant attempted to move with the child from Jackson County, Florida, to Atlanta, Georgia.
On August 8, 2003, Appellee moved for, and was granted, an emergency order prohibiting Appellant's removal of the child from the trial court's jurisdiction. The trial court later entered another order prohibiting either party from removing the child from Florida, and ordering Appellant to file a petition to relocate the minor child if she still wished to move to Atlanta. Appellant, who had previously moved to Atlanta, Georgia, returned with the child to Jackson County, Florida. Subsequently, both parties moved for primary place of residence of the child, and a final hearing was held on the parties' contentions.
At the final hearing, Appellant advised the court that she claimed the child's primary place of residence under section 742.031(2) and because she was the "de facto" primary residential custodian under the rationale of Gibbs v. Gibbs, 686 So.2d 639 (Fla. 2d DCA 1996). Accordingly, Appellant, during opening statement and in final argument, requested the trial court to *1202 apply the change-of-circumstances standard to the determination of the child's primary place of residence. The trial court disagreed on the grounds that no previous judicial order had specifically established the child's primary place of residence, and that the proper standard to be applied was the child's best interest, as in an initial custody determination. Further, the trial court ordered that the Appellant was the child's primary residential custodian, and provided that she and the child reside within a 75-mile radius of Marianna, Florida. Thus, Appellant's contemplated move to Atlanta, Georgia, the sole reason for the proceeding, was barred by the trial court, and she appealed.

Analysis

I.
First, in my judgment, the majority procedurally errs by basing its affirmance on a ground not argued by the parties below or in this court. In my judgment, a point not argued before this court is waived unless it is jurisdictional, against public policy, or illegal.
My feeling on this issue is not new. I have dissented on the same basis in the past, and I believe my reasons are valid. In Delissio v. Delissio, 821 So.2d 350, 355 (Fla. 1st DCA 2002), I stated, in a similar situation:
Implicitly, affirmance is based upon the "tipsy coachman rule," which provides that a trial court's erroneous ruling may be affirmed if another basis supports affirmance. See Carraway v. Armour and Company, 156 So.2d 494 (Fla.1963). However, in those cases where application of the rule determines a case's outcome, the opposing party has always advanced the alternative basis for affirmance. See City of Coral Gables v. Baljet, 263 So.2d 273 (Fla. 3d DCA 1972); State v. Stedman, 238 So.2d 615 (Fla.1970); C.W. Chase, Jr., v. Cowart, 102 So.2d 147 (Fla.1958); Dade County Sch. Bd. v. Radio Station WQBA, 731 So.2d 638 (Fla.1999); Green v. First Am. Bank & Trust, 511 So.2d 569 (Fla. 4th DCA 1987); E.A. Law & Co. v. Provende, Inc., 471 So.2d 107 (Fla. 3d DCA 1985). Here, the parties will, for the first time, become acquainted with the argument which forms the basis and rationale of this court's decision upon receipt of the majority's opinion. Because the basis for affirmance was not an alternate theory presented by the former husband, I believe the majority misapplied the "tipsy coachman rule." Moreover, in my judgment, when an appellate court affirms a trial court's erroneous ruling by searching for a basis for affirmance not argued by the parties, as the majority does here, an unintended byproduct is the impression that the court is a part of the adversarial process rather than a neutral judicial arbitrator. I realize that an appellate court must act sua sponte on issues involving jurisdiction, public policy, and illegality. However, this case involves the parties' private agreement that does not touch upon these exceptions. Furthermore, when a case is decided on an issue unnoticed to the parties, serious due process considerations are raised. Winddancer v. Stein, 765 So.2d 747 (Fla. 1st DCA 2000); Hancock v. Tipton, 732 So.2d 369 (Fla. 2nd DCA 1999). Thus, I cannot align with the majority.
(emphasis in original).
However, even assuming arguendo that my stated position is incorrect, the majority's version of the rule is incorrectly applied here.

II.
The majority's reliance upon Arsenault v. Thomas, 104 So.2d 120 (Fla.1958), is ill-founded. In Arsenault, the Appellant appealed *1203 the trial court's giving a jury instruction requested by him; the court there rejected Appellant's right to appeal an error created by him. There is no remote similarity between Appellant's position and the Arsenault scenario. Here, the entire controversy centers around whether Appellant could move the minor child to Atlanta, Georgia. She defended that position vigorously and consistently. The trial court ruled that Appellant could not move the child to Atlanta, Georgia, and further limited and conditioned her primary custodial status to an area within a 75-mile radius of Marianna, Florida. Appellant was the "de facto" and statutory primary residential custodian before the litigation, but as a result of the trial court's order, Appellant is granted the relief she resisted, and denied the relief she requested, but the majority concludes this was a "favorable ruling" to Appellant. This simply cannot be, unless the phrase "favorable ruling" is redefined to mean something other than what is requested, desired and pleasing, which is the effect of the majority opinion.

III.
In my judgment, should this Court reach the merits of this appeal, and I believe it should, it is clear to me the trial court applied the incorrect standard in modifying the child's primary place of residence. Appellant had been the "de facto" primary residential custodian of the child since his birth, a circumstance that requires the trial court to apply a change of circumstances standard rather than the best interest of the child standard that it applied. See Wyckoff v. Wyckoff, 820 So.2d 350, 354 (Fla 2d DCA 2002). The parties were operating under a voluntary visitation schedule until July 24, 2002, when the trial court established a visitation schedule for Appellee. This arrangement creates a de facto primary place of residence, as found in Wyckoff, where the court stated:
When the parties establish a visitation schedule wherein one parent has the children for a majority of the time, and there is no language expressly addressing the burden of proof in a modification proceeding, that arrangement can only be modified when the petitioning parent meets the Gibbs standard.
Id.
Furthermore, the trial court also erred when it failed to recognize that Appellant was the primary residential custodian under section 742.03(2), requiring application of the substantial change of circumstances test. That statute provides:
If a judgment of paternity contains no explicit award of custody, the establishment of a support obligation or of visitation rights in one parent shall be considered a judgment granting primary residential care and custody to the other parent without prejudice. If a paternity judgment contains no such provisions, custody shall be presumed to be with the mother.
The court in the ex parte paternity action on April 23, 1999, determined Appellee to be the child's father and ordered him to pay support, which he has done. Under section 742.03, this made Appellant the primary residential custodian of the child. That the proceedings were ex parte does not change this result.
Under section 742.02, Appellee was granted the right to seek primary place of residence as a part of the 1999 paternity action. He failed to do so, and this established the primary place of residence with Appellant, without a geographical radius restriction on the child's residence. By applying the best interest standard and geographically restricting Appellant's primary place of residence, the trial court *1204 overlooked the effect of section 742.031(1) and should be reversed, just as it should be under the "de facto" primary place of residence principle.

IV.
Also, it is clear to me that the trial court erred when it determined the child's relocation, because the court was confused about the correct standard to apply, or it is impossible to determine if it applied the mandatory provisions of section 61.13(2)(d), as required. The trial court referenced only "section 61.13" in his order. And as the statute provides the standards for an initial custody determination and the standards for post-custody relocation, one is unable to intelligently determine which standard he utilized. Section 61.13(2)(d) provides that when a trial court makes a determination "... as to whether the primary residential parent may relocate with a child, the court must consider all the relocation factors." The order is silent as to whether or not the trial court considered all the factors or the correct factors; the only mention of section 61.13, by the trial court was in the context of determining primary place of residence, not relocation, where consideration of all the factors is required. Accordingly, a reversal for reconsideration under the correct relocation standards is required.
The majority excuses the trial court's failure to exhibit that it considered all the statutory factors, because "magic words" are not required. But a trial court is required to consider mandatory statutory criteria, and I do not think it is too much to require that it show compliance. This did not happen here. Can it be seriously argued that it would not have been more appropriate for the trial court to show, for the benefit of the parties and this court, that it did what the statute requires? I think not. In my judgment, when this court sets an initial standard, as here, it is far better to set a high standard that facilitates full compliance rather than one that facilitates minimal, or no compliance.

Conclusion
For the reasons stated, I would reverse the trial court and remand for reconsideration.